CARLTON,
J., for the Court:
¶ 1. Vandiver (Van) Strickland appeals the judgment of the Stone County Chancery Court granting his wife, Myria Strickland, a divorce on the ground of adultery and the chancery court’s post-trial judgment entered under Rule 59 of the Mississippi Rules of Civil Procedure. On appeal, Van claims that the chancery court was manifestly wrong, abused its discretion, and committed numerous errors, as follows: (1) awarding Myria the marital home with equity of $154,000 and in “offsetting” this amount by awarding Van $154,000 from his retirement funds without regard to the tax consequences applicable to the retirement funds; (2) recognizing the relevancy and effect of the tax consequences upon either party being awarded retirement funds and then refusing to apply this factor in making its equitable distribution; (3) finding that Van should pay permanent alimony of $2,500 per month, without regard to the facts that Myria has the present ability to receive her portion of Van’s retirement pension; that she can be gainfully employed; and that she has chosen to assume the financial responsibility of raising her granddaughter; (4) finding Myria was entitled to an award of $8,000 in attorney’s fees, when the only evidence supporting such fees was an itemized bill introduced by Myria’s counsel; (5) finding that there were no “joint liabilities or joint debts of this marriage” when in fact debts from credit cards and a loan existed prior to the temporary order and were debts of the marriage; and (6) failing in the equitable distribution to recognize the value of the personal property, including two automobiles that Myria received. Myria cross-appeals, contending that she is entitled to the increase in value of the parties’ asset accounts as a result of passive growth since the temporary order was entered in 2008.
¶ 2. After reviewing the record, we find no merit to Myria’s cross-appeal. However, we find reversible error in the chancery court’s division of the marital estate and award of alimony. We find that the chancellor abused her discretion in ordering an erroneous equitable distribution of the marital property, and that she applied erroneous legal standards to the equitable distribution and award of alimony.[1] Accordingly, we reverse and remand this case for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 3. Van and Myria married on August 29, 1974, and the couple separated in 2008. The marriage produced one child, who is now an adult. At the time of trial, Van worked at Mississippi Power Company, where he enjoyed a long and successful career of more than thirty years. Myria worked for a large portion of the marriage as a secretary until she left her employment in 2000 to care for their grandchild.[2]
*1219 ¶ 4. On October 9, 2008, Myria initiated the litigation by filing a “Complaint for Separate Maintenance” against Van in the Stone County Chancery Court. Shortly thereafter, the chancery court entered a temporary order, dated October 27, 2008, and filed October 30, 2008. The temporary order in the separate-maintenance action required, among other things, that Van pay Myria $2,600 per month in temporary spousal support.[3] On March 23, 2009, Van then filed his answer and defenses to Myria’s complaint for separate maintenance and also filed a counterclaim for divorce against Myria. Myria answered the counterclaim for divorce, denying the essential allegations of Van’s claims.
¶ 5. On May 22, 2009, Myria filed an amended complaint for divorce based on Van’s alleged adultery. A trial subsequently commenced over a period of the following five days: June 15, 2009; August 5, 2009; August 6, 2009; March 11, 2010; and March 16, 2010. On July 8, 2010, the chancery court rendered the judgment of divorce. The judgment granted Myria a divorce on the ground of adultery; equitably divided the marital estate; awarded $2,500 per month in alimony to Myria; and ordered Van to pay Myria $8,000 in attorney’s fees. The judgment of divorce also awarded Myria the marital home and one-half of the value of the couple’s asset accounts.[4] Additionally, the judgment awarded Van $154,325 in funds from his Southern Company Employee Savings Plan and his USB stock options to “offset” the award of the marital home to Myria. The parties also received their respective vehicles.[5]
¶ 6. Following the judgment of divorce, Van filed a post-trial motion under Rule 59 requesting that the court set aside, alter, and/or amend its July 8, 2010 judgment of divorce, citing various alleged errors in the judgment of divorce. After holding a hearing, the chancery court entered an order on October 15, 2010, denying Van’s motion in part and granting the motion in part. The post-trial order amended the judgment of divorce.
¶ 7. Pertinent to the issues on appeal, the record reflects that in the October 15, 2010 post-trial order, the chancery court clarified the judgment of divorce by requiring Van to pay $2,500 per month in alimony until Myria began to receive her portion of Van’s pension. Then, the court ordered that when Myria began to receive her portion of Van’s pension, Van would pay in permanent alimony the difference between the monthly pension benefit and $2,500, the amount of the alimony award. The October 15, 2010 order also clarified that any division of the parties’ asset accounts should be based on the value as of the date of the temporary order, October 2008.[6]
¶ 8. Feeling aggrieved by both the judgment of divorce and the amended judgment, on November 9, 2010, Van filed his *1220 notice of appeal, appealing the judgment of divorce dated July 8, 2010, and also appealing the Rule 59 order entered on October 15, 2010. Myria responded by filing a notice of appeal on November 23, 2010, likewise appealing both the judgment of divorce and the October 15, 2010 order.
¶ 9. Then, on December 20, 2010, at the request of Myria, the chancery court entered another post-trial order designated an “Order Clarifying Judgment.” The chancery court entered this post-trial order under Rule 60 of the Mississippi Rules of Civil Procedure, and provided that My-ria was entitled to receive the “investment experience,” including any earnings and/or losses attributable to her portion of the couple’s asset accounts[7] from and after the date of the 2008 temporary order. This December 2010 post-trial order affected the previous equitable distribution of property and the demarcation date regarding the marital property. On May 27, 2011, the chancery court, acting under a different presiding chancellor, denied Myria’s request that the court mandate the disbursement of the funds, as ordered in the December 20, 2010 order, relating to the increase in the value of her portion of the asset accounts accrued since the date of the 2008 temporary order.
STANDARD OF REVIEW
¶ 10. “This Court “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.’” Segree v. Segree, 46 So.3d 861, 864 (¶ 8) (Miss.Ct.App.2010) (quoting Benal v. Benal, 22 So.3d 369, 372 (¶ 4) (Miss.Ct.App.2009)). We will affirm if the chancellor’s findings are supported by substantial evidence. Id.
DISCUSSION

I. Division of the Marital Estate and Award of Alimony

[8]

¶ 11. Van argues that the chancery court erred in awarding $2,500 per month of permanent alimony to Myria, without regard to Myria’s option and ability to receive her pro-rata share of Van’s Mississippi Power Company pension and Myria’s ability to work. Van also asserts that the chancery court erred in failing to restrict alimony to the period of time from the date of the judgment until the actual date that Van retires and Myria’s Social Security benefits take effect. Van further contends that the chancery court erred by: awarding Myria the marital home with equity of $154,000 and in “offsetting” this amount by awarding Van $154,000 from his retirement funds without regard for the tax consequences of the retirement funds; failing to apply the tax con sequences in making the equitable distribution; finding that there were no joint liabilities or debts of the marriage; and failing to recognize the value of the personal property received by Myria, including her two automobiles. For the reasons stated below, we find the chancery court’s equitable division of the marital property to be erroneous since the alimony obligation continues until Myria elects to receive her portion of Van’s retirement awarded to her as marital property. See Deborah H. Bell, Bell on Mississippi Family Law § 7 (2005) (discussing the valuation of various types of pension plans *1221 in the division of marital property). By allowing Myria to receive her share of Van’s retirement pension when she so chooses instead of utilizing some criteria related to discounting the pension’s future value to current value or to some certainty as to the date of receipt, i.e., at Van’s retirement, the chancellor erred in the equitable division of the property. The value and payments from Van’s pension differ depending upon when Myria elects to receive them; therefore, the division of this marital asset is ambiguous.[9] See generally Williamson v. Williamson, 81 So.3d 262, 267-74 (¶¶ 13-24) (Miss.Ct.App.2012). Therefore, we must reverse and remand this case to the chancery court.
¶ 12. “An award of alimony should only be considered if one party will suffer a deficit after the marital property has been equitably divided.” Seymour v. Seymour, 960 So.2d 513, 519 (¶ 16) (Miss.Ct.App.2006) (citing Lauro v. Lauro, 847 So.2d 843, 848 (¶ 13) (Miss.2003)). “Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede.” Id. In considering whether to award periodic alimony, the following factors are to be considered:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties.
8. The standard of living of the parties, both during the marriage and at the time of the support determination; 00
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Id. (quoting Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993)).
¶ 13. Upon the conclusion of the trial and the post-trial supplementation and hearings, the chancery court made the following ruling as to the award of alimony:
Based on the Armstrong factors outlined above, the [c]ourt finds that an award of alimony is appropriate in this case. After a detailed review of the parties’ expenses, the discrepancy in their incomes[,] and all other relevant factors, the [c]ourt finds that Defendant \Van\ shall pay alimony in the amount of $2,500 per month until such time as Plaintiff [Myria] begins receiving her portion of the pension. At that point, *1222 Defendant \Vari\ shall pay in permanent alimony the difference between the monthly pension benefit and $2,500. Additionally, the [cjourt finds that Mr. Strickland will maintain Mrs. Strickland’s health insurance coverage with his employer’s COBRA plan, paying all premiums associated with the policy until such time as Mrs. Strickland begins receiving her portion of the pension. Mrs. Strickland shall pay any other premiums for any other coverage she elects to receive, such as dental or ocular.
(Emphasis added).
¶ 14. As set forth above, the chancery court’s division of the marital property included a division of Van’s retirement pension. However, in this division of the marital asset, the court allowed Myria to recover $2,500 per month in alimony and allowed her to continue to receive alimony until Myria elected to receive her portion of Van’s pension. Therefore, the equitable division of this marital asset is ambiguous and allows Myria to increase her share of Van’s pension depending upon when she elects to draw payments for her share. See Williamson, 81 So.3d at 267-74 (¶¶ 13-24). Such a division of the marital property is inconsistent with Mississippi precedent requiring that the equitable division of the marital estate be completed prior to determining if either spouse suffers a deficit in the division of the marital estate warranting an award of alimony. See Lowrey v. Lowrey, 25 So.3d 274, 292 (¶ 44) (Miss.2009); Godwin v. Godwin, 758 So.2d 384, 387 (¶ 9) (Miss.1999) (“After an equitable division of [marital] property, the final step the chancellor must complete is a consideration of the need, if any, for alimony.”). By allowing Myria to elect when to begin receiving her share of Van’s pension, an ambiguity arose in the equitable division of the marital property. Moreover, the equitable division of the marital property must be completed and a need displayed prior to an award of alimony. Seymour, 960 So.2d at 519 (¶ 16).
¶ 15. Alimony is considered only if after the marital property has been equitably divided, the chancellor determines one spouse has suffered a deficit. Id. Regarding when an award of alimony is warranted, the Mississippi Supreme Court has stated:
Division of marital assets is now governed under the law as stated in Hemsley [v. Hemsley, 639 So.2d 909 (Miss.1994) ] and Ferguson [v. Ferguson, 639 So.2d 921 (Miss.1994) ]. First, the character of the parties’ assets, i.e., marital or non-marital, must be determined pursuant to Hemsley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties’ non-marital property. If there are sufficient marital assets which, when equitably divided and considered with each spouse’s non-marital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party’s non-marital assets, leaves a deficit for one party, then alimony based on the value of non-marital assets should be considered.
Lowrey, 25 So.3d at 292 (¶ 44) (emphasis added and internal citation omitted).
¶ 16. Accordingly, we must reverse and remand both the chancery court’s award of alimony and the equitable division of the marital property. We remand this case for further proceedings consistent with this opinion.

II. Attorney’s Fees

 ¶ 17. Van also takes issue with the chancery court’s award of $8,000 in attorney’s fees to Myria. “An award of attorney’s fees in domestic cases is largely *1223 a matter entrusted to the sound discretion of the trial court.” Pierce v. Pierce, 42 So.3d 658, 664 (¶ 27) (Miss.Ct.App.2010). We will not disturb the award of attorney’s fees on appeal unless we determine that the chancery court was manifestly wrong. Id. In the chancellor’s judgment of divorce, she found that an award of attorney’s fees to Myria was appropriate, and ordered Van to contribute to the payment of My-ria’s attorney’s fees by paying her $8,000. “[W]here we reverse the property division and alimony, the attorney’s fees may be revisited on remand.” Id.; Lauro, 847 So.2d at 850 (¶ 18). Accordingly, we find that the chancery court, upon remand, may revisit the attorney’s fees awarded to Myria in light of this Court’s reversal of the property-division and alimony awards.

III. Cross-Appeal

¶ 18. Myria argues that the chancery court, in its judgment of divorce and October 15, 2010 post-trial order, awarded the value of the couple’s asset accounts as of the date of the October 2008 temporary order, but Myria asserts that the chancery court failed to address the passive appreciation in value accruing between October 2008 and the date of distribution. Myria asserts that in the “Order Clarifying Judgment,” dated December 20, 2010, the chancery court amended its previous decisions[10] and awarded the parties the passive-growth increase in the value of these asset accounts based on the parties’ respective one-half interest in the accounts. Myria asks that this Court affirm the December 20, 2010 order, and she requests that this Court mandate that each account be divided as set forth by that order.
¶ 19. After reviewing the record, we find that the chancery court lacked jurisdiction to enter the December 20, 2010 order that changed the previously entered final judgment in material terms. “Filing a notice of appeal transfers jurisdiction from the trial court to an appellate court, thereby removing the trial court’s authority to amend, modify, or reconsider its judgment.” Corp. Mgmt. v. Greene County, 23 So.3d 454, 460 (¶ 13) (Miss.2009). “In other words, the appeal removes the case ipso facto to the appellate courts.” Id. A party may execute on the judgment if an appeal has no supersedeas bond; however, “the [chancery] court cannot ‘broaden, amend, modify, vacate, clarify, or rehear the decree.’ ” Id. (citation omitted). “On the other hand, when an appeal has a supersedeas bond it effectively suspends the judgment.” Id. (citing In re Estate of Moreland v. Riley, 537 So.2d 1345, 1348 (Miss.1989)). As such, “enforcement of the rights declared by the decree are suspended until the appeal is determined.” Id. “When a trial court’s order broadens, amends, modifies, vacates, clarifies, or rehears a decree, ‘it must be vacated as null and void because it exceeds the subject matter jurisdiction of the lower court.’ ” Id. (citation omitted). See generally M.R.C.P. 59(e) (“A motion to alter or amend the judgment shall be filed not later than ten days after entry of the judgment.”). See also McNeil v. Hester, 753 So.2d 1057, 1075 (¶ 68) (Miss.2000); Bert Allen Toyota, Inc. v. Grasz, 947 So.2d 358, 362-63 (¶ 7) (Miss.Ct.App.2007).
¶20. Van filed his notice of appeal on November 9, 2010. Myria responded by filing her notice of appeal on November 23, 2010. On December 20, 2010, the chancery court entered an order that altered the judgment of divorce by *1224 changing the division of the property regarding the increase in value of the asset accounts to the date of the distribution, rather than the date of the temporary order.[11] Because the chancery court’s December 20, 2010 order impermissibly broadened and amended the previous judgments of the court, subsequent to the filing of Van’s notice of appeal, we find that the December 20,-2010 order must be vacated as null and void. See Corp. Mgmt., 28 So.3d at 460 (¶ 13) (“When a trial court’s order broadens, amends, modifies, vacates, clarifies, or rehears a decree, ‘it must be vacated as null and void because it exceeds the subject matter jurisdiction of the lower court.’ ” (citation omitted)). The chancery court lacked jurisdiction to enter such an order. See id. We further find that the May 27, 2011 order, which was before the chancery court on the motion of Myria seeking to enforce the December 20, 2010 order, is also null and void. This issue is without merit.
¶ 21. THE JUDGMENT OF THE STONE COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. See Johnson v. Johnson, 76 So.3d 781, 787 (¶ 31) (Miss.Ct.App.2011) ("When deciding whether alimony should be awarded, chancellors must consider the Armstrong factors.”).

. Van and Myria were guardians of this child *1219 at the time of trial.

. By an August 12, 2009 order, the chancery court extended the temporary order to the conclusion of the trial on the merits.

. These asset accounts include the Southern Company stocks, the E-Trade IRA, the E-Trade Individual Account, and the remaining value in the Southern Company Employee Savings Plan.

. Myria received her 2003 Toyota 4Runner and her 1999 Toyota Tacoma. Van received his 1995 BMW.

. The judgment of divorce reflects that the parties’ asset accounts to be split between Van and Myria consisted of Southern Company Stocks, the E-Trade IRA, the E-Trade Individual Account, and the remaining value in the Southern Company Employee Savings Plan.

. These accounts included: the Southern Company Stocks, the E-Trade IRA, the E-Trade Individual Account, and the remainder of the Southern Company Employee Savings Plan.

. For purposes of efficiency, we have consolidated our analysis of Van's first, second, third, fifth, and sixth issues.

. In the judgment of divorce, the chancellor addressed Myria's portion of Van’s pension by stating:
As for [the] pension, Mrs. Strickland is awarded a pro-rata portion of the pension plan Mr. Strickland receives through his employment at Mississippi Power. Mrs. Strickland’s pro-rata share shall be based on the date of the parties' marriage on August 29, 1974, through the date of the Temporary Order on October 27, 2008.
In the October 15, 2010 post-trial order, the chancellor again stated that “Mrs. Strickland is entitled to one[-]half (1/2) of the pension through the date of the Temporary Order whenever she begins receiving it.”

. The chancery court had previously entered the judgment of divorce on July 8, 2010, and an amended order on October 15, 2010.

. The prior orders of the chancery court awarded the value of the accounts as of the date of the temporary order in October 2008.